Good morning, your honors. My name is Clayton Vreeland, appearing for Lois Orlock, the appellant. The issue in this case is whether a California innocent spouse who has been relieved of liability under Section 6015B is entitled to a refund of payments she made against that liability with community property. There is a fundamental error in the tax court majority opinion which is perpetuated in the commissioner's brief that Section 6015, the argument that the appellant uses that payments with community property are entitled to be refunded, is a new change in the law that under the prior versions of the innocent spouse statute, community property payments, payments made with community property could not be refunded to an innocent spouse. That is simply incorrect. And the fact that it is incorrect can be shown by examining a number of statutes, regulations, the legislative history of the prior innocent spouse statutes, the legislative history of the current version of Section 6015, Let me ask you a couple of questions. Yes, sir. When a husband and wife file a joint return in California and there's a deficiency, then the IRS can come after the community property. Correct. The IRS can come after the husband's separate property. And the wife's separate property. And the wife's separate property. All right. Now, when a husband and wife file separate returns in California and there's a deficiency, and one of them has a deficiency, say, for example, a husband, then the IRS can come after the husband's separate property. All right? Correct. I'm trying to get educated. And can come after the community property. Yes. Right? But can't come after the wife's separate property. That is correct. That's right. And now, it's my understanding that the purpose of this innocent spouse statute is to treat couples who file jointly as if they filed separately. No, I don't think that's exactly correct. What's inexact about what I said? Well, I think the purpose of Section 6015, there are nine words in Section 6015 that I think exemplify the purpose. And they appear in subsection B1D. And it is a requirement in order to be relieved of liability as an innocent spouse that, and I quote, it is inequitable to hold the other individual liable, close quote. And that other individual is the innocent spouse. The whole purpose of Section 6015 is to protect the innocent spouse's assets. It's to protect the separate property of the innocent spouse. There is nothing in Section 6015 which draws a distinction between the community property of the innocent spouse and the separate property of the innocent spouse. And there's nothing in the existing law. I mean, you know, the Internal Revenue Code is an integrated code. You can't hardly look at any section without being referred to ten other sections. All of those other sections and the case law, all is consistent that there should be no distinction between separate property and community property in this sort of situation. Well, let's say that all the couple owned was community property. And the husband was, the wife didn't know what was going on. The husband was a terrible business person and he cut a lot of corners that he shouldn't have cut and all that. And there's a deficiency. Could the IRS come after the community property? And the wife was granted innocent spouse relief? No, no, just generally. Oh, yes. Yeah, sure. And if you've got a case that, where there's just community property involved, where the wife is an innocent spouse and she can come in and get half the community property that was used to pay off the Internal Revenue Service because of her husband's poor management and all the rest of it? This is the key distinction between an appellant's position and the commissioner's position. The appellant's position is... I mean, do you have a case on this? I'm sorry? Do you have a case on that? Do I have a case on that? Yeah. Precedent. The Janus case, I would say it this way, Your Honor. Very, about halfway through the briefing process in this case, the application of Section 6402 was raised as a question. The commissioner said that the refund question was not a determination under Section 6015. It was a determination under Section 6402. And the appellant agrees with that. The appellant agrees that Section 6402 is applicable in determining the amount of any overpayment by the innocent spouse. And there are plenty of cases under Section 6402 that describe how the calculation, how an overpayment is to be... I'm not talking about overpayments. I'm just talking about paying the tax out of the community estate, not paying too much, not overpaying. So, again, I'm a little unclear as to whether we're hypothesizing that one of the spouses has been granted innocent spouse relief or not. Let's say this. Okay. Well, so, and now we're not talking about a refund. There's been no overpayment. So the question now is what can the IRS do to collect this deficiency that is still owed by the spouse that is not the innocent spouse? Section 6015 has a provision that limits the power of the commissioner to take action against an innocent spouse applicant. And it is the appellant's position that Section 6015 would not limit the commissioner's power to proceed against applicants without intending that there would be a similar limitation that would apply if innocent spouse status were granted. That particular provision in Section 6015 limits the commissioner's ability to levy on assets of the innocent spouse applicant. That provision is silent as to the commissioner's ability to place a lien on assets in which the innocent spouse applicant may have an interest. From that, we, our applicant's position, appellant's position, sorry, is that even if someone has applied for innocent spouse relief and has been granted innocent spouse relief under Section 6015B, the commissioner still has the authority to place liens on assets in which that applicant may have an interest, for example, joint bank accounts. Now, when it comes to levying on those assets, we think that a grant of innocent spouse relief now throws the situation into a situation similar to that described in the Rogers case and the Overman case, where the commissioner was entitled to levy on those assets, but he could only take essentially half of the assets, the half that belonged to the taxpayer whose liability he was seeking to collect. He could not collect and keep the share of the other spouse, in this case, the innocent spouse. Does that refer to community property as well? I mean, to me, it brought up an ordinary creditor. He can collect community assets to satisfy the debt of a single spouse. Where is the evidence that Congress intended to place the commissioner at a disadvantage here, as opposed to an ordinary creditor? The evidence is in the fact that when Section 6015 was enacted, and it appears in the legal documents that Section 6015B was enacted in the legislative history of 6015, there was an estimate given of the cost to the U.S. government that the enactment of this provision, what it would cost, basically, in lost revenues. I mean, you know, millions of dollars. Congress clearly understood that by granting innocent spouse relief, even though it's really just an allocation of the liability, it's not an allocation between spouses. There's no tax liability that's going away. It's just being shifted from, you know, joint liability over to the one spouse who is an innocent. They understood that even though the IRS on paper still has a claim for the same liability, it's going to make it harder for the IRS to collect that liability. And they made an estimate of what that cost would be. That's the evidence that they intended to place the IRS on a different footing than other creditors. I mean, no other creditor other than the IRS was adversely affected by Section 6015. Was there reference to community property in making that estimate that you're talking about, of what they would lose? Was there any discussion of community property? So I find it significant that the word determination appears repeatedly, but not in the subsection regarding refunds. What is your response to that? Well, my response to that is that there is authority. Again, this gets back to a point I mentioned a little bit earlier. The commissioner's argument that determining a refund is not a determination because you have to look at a different section, 6402. There is authority that clearly points out that Section 6402 does not give the tax court jurisdiction to decide who made an overpayment. And I'm referring to a case called Estate of Fink v. United States. The citation for that is 653 F. Sup. 368. It is an Eastern District of Michigan case decided in 1986. Is that in your briefs? No, I'm sorry. It's not. Then you'd have to fill out a sheet and submit it to the court. Okay. I'll do that. Thank you. But the point is that the coming up with a refund amount under Section 6015G is a determination, and it is not a determination under 6402. As the commissioner claims, because there's nothing in 6402 that gives the tax court any authority to determine anything. The only provision that does that is 6015G. Let me just ask you a question. Are these folks still married? Yes, they are. They're still together? Yes. And what is the distinction between the IRS's right to collect and the IRS's right to grant refunds? Is there a distinction between them? Yes, I think there is a distinction. It is a the distinction is that Section 6402, which again, both parties agree, is the provision that determines refund rights, only allows certain types of offsets that are indicated right in the statute. And, for example, it says that the commissioner has the right to offset an overpayment against other liabilities owed to the U.S. government by the person that made the overpayment. It doesn't say the IRS has the right to offset an overpayment against other liabilities owed to the United States by the spouse of the person that made the overpayment. Presumably, if Congress had wanted to allow more offsets to an overpayment, they would have added to the list in Section 6402. They didn't do that. So, I mean, the IRS can issue the refund, and then it can go through the process of levying on the money that it releases. But there are procedural safeguards. The point is that going all the way back to 1974, the amount to which the amount of a refund to which a taxpayer is entitled has been determined not based on an examination of the nature of the payment as community property or separate property, but has been based solely on did the person make the payment. The IRS doesn't need to go behind the payment to determine the nature of the payment in order to calculate the amount of the overpayment. This is not a new concept that was... Are you talking about a joint return or separate return? Yes, both. I mean, obviously, in a separate return context, the issue doesn't come up very often. Where it generally comes up is in a joint return context. And there are a number of cases that do involve joint returns where this exact point was made. You can't just look at a payment and say, okay, well, this was a community property state. This was California. This was Texas. We're going to split it 50-50. They look at who made the payment. And in some cases, they allocate the whole payment to one spouse, even though it was made with community property. I see that I'm just about out of time. Well, I think this question, you talked about it, but just so it's clear. Can you quote for me, for us, the legislative history that would tell us that Congress intended to disregard California community property? Law for refund purposes? Would you like that legislative history from the current statute or from the prior versions? Because, as I say, this is not a change. They're the same, huh? They're the same, yes. I just have the informal citation, 1998-3, cumulative bulletin at 593. Why don't you write it down? Yeah, no, it's in the brief. Yeah, well, write it down anyway. Okay, certainly will. It says, and I quote, That's withholding tax. Well, we've got clear case law that estimated tax payments are allocated to the person that makes the estimated tax payment. We've got clear law that withholding tax withheld from wages is allocated to the person from whose paycheck the tax was withheld. And in neither of those cases does it matter whether it's community property or not. The commissioner is arguing that you carve out one narrow little type of payment. It isn't withholding, it isn't an estimated tax payment, it's something else. It's a payment made after the fact. And for those types of payments, and only those types of payments, well, they're not saying only those types of payments, but, I mean, when you look at the authority, you basically have to say that. For only that narrow type of payment, community property matters. And that's just basically incorrect. Do you want to save a couple minutes? I would love to. You're over. I'm over, so thank you. We'll have to put a lien on something. May it please the Court, good morning. My name is Teresa McLaughlin, and I represent the commissioner. And the commissioner's position is that the tax court majority was right that the innocent spouse statute preempts community property laws only for purposes of determining eligibility for relief, and not in making refunds from such a determination. Federal law preempts state law and community property law only where the congressional intent to accomplish this is clear and unequivocal, and we don't think it is in this case. There are several reasons why the tax court majority was right that the determination spoken of that is to be made without regard to community property laws, is the determination of eligibility for relief. And what bothers me about this case is doesn't denying a refund of community property payments create inequity between taxpayers in community property states and taxpayers in common law states? Well, in a community property state, any creditor, I mean, in taxpayers in common law states, in California, any creditor of a sole spouse can attach property of the community. And so we don't think that the commissioner should be at an advantage or disadvantage or that Congress intended it to be such. Now, in a common law state, if a spouse is granted innocent spouse relief, that spouse's separate property will be exempt. And that is true in a community property state, too. The inequity, you know, if you go along with the taxpayer's position, is that if community property laws are lifted for purposes of determining who gets a refund, then, and the community continues as it did in this case, then spouses in community property states will be allowed to structure the payments. And it will remain community property, but they could have the person who's going to be the innocent spouse write the check, so that later, if you're trying to sort out the source of the payments, the spouse, the innocent spouse would get credit for that as her separate payment. And we don't think that spouses in common law states have that kind of freedom, because in a common law state, you really have to commit yourself, you know, whose property is, you know, if you want it to be made from a spouse's separate property, you have to title it that way before you write the check. Well, it would be difficult to administer, but that. Yes. Well, let me just ask, what exactly does it mean to be, quote, relieved of liability under 6015B if a taxpayer could not obtain a refund for money paid on that liability? Well, it's clear that being granted relief can result in an overpayment, but then you go to the question of what is collectible, and since, and the commissioner's collection rights depend on whether the other spouse, the culpable spouse has rights or rights to property, and in California, there's enough rights to property that the community property can be attached to the sole debt of the culpable spouse. It's not that you can't have refunds made under Section 6015. It can result in an overpayment, and in fact, the 1976 Act, which opened up old years, speaks of an overpayment resulting from the determination of eligibility for relief, and, you know, we think that this is part of what supports the tax court majority's construction that the determination is, should you be held liable. And the whole thrust of the statute is, I mean, is it fair to hold the spouse liable for this misreported or unreported item on the joint return? And, you know, it is a tax indisputably due and owing. It's just a question of from whom should it be collected. And so, and that's, it is strange to have a section, a subsection in substantive statute saying you're entitled to a refund, because, you know, if you have a trade or business deduction, of course, that's going to reduce your tax liability, and you just get a refund under Section 6402. The reason that this statute probably has a special rule about refunds is, number one, to make it clear, if there were any doubt, that if there is an overpayment, you get a refund. But also to prescribe really two special rules. One is that under this new type of relief that was in the Senate bill that was never before available, where if you're divorced, separated, living apart for a year, you can be put on the basis as if you had done married filing separately, but you can't get a refund. So the refund section in here says you can't get a refund. Then there's another subsection that says, provides a special rule for lifting race judicata, and that is that even if you had a decision, but, you know, but this new statute offers more types of relief, even if there was a prior judicial decision before this statute was enacted, if innocent spouse relief wasn't at issue, you, the race judicata was not at issue. The race judicata is going to be lifted unless a court determines that you participated materially in that decision. So those are the two special rules, and then you go up to the first part, prescribing the general rule, and it says, except as provided in subsections two and three, which I have just explained, no refunds for separate return relief, you know, with a special race judicata rule, and there are, notwithstanding any other law or rule of law except for four statutory exceptions that have to do, that go to whether a refund claim would be time barred or irrevocably settled or compromised, then you get a refund. This language, notwithstanding any law or rule of law, was in prior, a prior enactment in 1988 that, again, prescribed more expanded relief and lifted the bar of race judicata and let people come in and get refunds. This statute just says, notwithstanding any other law or rule of law, because there, it also refers to the four statutory subsections. So the taxpayer thinks that this language, notwithstanding any other law or rule of law, lifts community property for purposes of determining refunds, but the thrust of it, if you look at, you know, the 1988 Act, which had the same language, and the 1976 Act, which talked about you can get refunds, notwithstanding race judicata, for this new kind of relief. That is the thrust of subsection G, dealing with refunds. And Judge Thornton, in concurrence, was correct when he pointed out you can't make a determination of a refund solely under section 6015 itself. You have to refer to section 6402. You have to know what payments were made and what the liability was. So, but backing up, I do ---- Let me ask you this. You heard the questions that I asked counsel about the purpose of an innocent spouse rule. And basically, it's to protect the separate property of the innocent spouse. Is that right? Yes. Yes, Your Honor. And you also asked, I have a note to myself, that you asked whether this statute puts spouses on a separate return basis, and the answer is only partly. And that's only for married, I mean, for divorced, separated, living apart people who elect to be put on a separate return basis. But they are not, they cannot get refunds. So what the innocent spouse statute does is, it can be a whole deficiency, it can be part of a deficiency, but mostly attributable to an error, in the reporting by the other spouse, an item that's attributable to the other spouse. And that's why it's so important to, in making this determination, to figure out what incomes deductions. Give me an example. Okay. Well, suppose there was an unreported income, like a husband embezzled and filed a return where that wasn't reported and the wife didn't know and she had no reason to know. That's the type of thing, and the reason why you need to lift community property law is, that under community property law, that embezzled income would be half his and half hers. So you need to suspend it for purposes of determining what items are whose. And only when you determine what items are attributable to each spouse can you make a determination, you know, this was his, is it his, is it not his, is it not his. I mean, this is what he earned or acquired. Right. Or it could be a phony deduction or a phony credit or a phony claim of basis. So in the first subsection, when the statute says a determination under this section is to be made without regard to community property laws, it's, you need to sort out what items belong to which spouse, and what items belong to which spouse. In order to determine, sort that out and then say, is it fair to hold the other spouse liable for the error in reporting? Because you've subscribed a joint return, you're jointly and severally liable. And that is, so we think that the suspension of community property laws goes to the determination of, is it fair to hold the person liable. And it's been that way for a long time. Under prior law, community property law was suspended for purposes of... So then, so then, you know, the husband embezzles money. He doesn't report it. The wife knows nothing about it. And then this comes to the attention of the IRS. And now there's a big tax liability. Yes. And was the community liable for that tax? Well, if you file a joint return... In a community property state, the community, the wife would be sort of, the fiction is that the wife would have half of that embezzlement income attributable to her. So what this statute needs to do is lift community property laws for the purpose of determining, is this her income? Because if it's, if it is her income instead of his income, then she's not eligible for relief. So the law... But it is his income. So what relief will she get? Relief from joint and several liability, meaning that her separate property would not be subject to collection. But the community property is. Right. Well, that's what I was just asking. Yes. Yes, it is, because, and it's under California law, the community can be subjected to the debt of a sole spouse. So all we're protecting under innocent spouse law is the separate property of the innocent spouse. That's right. Suppose that a spouse knew he's not going to report that embezzled income. So what the wife would do is she would file a separate return and she would report her own income, and then she wouldn't be liable. She wouldn't, her separate property would not be liable for the tax, but still his debt for that deficiency can still be collected from community property in California. So you don't want to, and the tax court majority pointed this out, it's unfair to put married filing separately California couples on a worse footing than people, you know, and they pay tax at higher rates, on a worse footing than people who do file joint returns. And that is one anomaly that could, that the majority was quite correct, would result from the rule that the taxpayer is proposing in this case. So we think that... So here the taxpayer, her, she, all that she can protect is the separate property. In California. Now the Overman case that might... I mean, let's just... The only thing she is entitled to is a separate property, hers. In California that is true, and the Overman case that the opposing counsel cited, that has to do with Washington State community property. And they have a rule there that only half of it can be recovered out of community property. What's their rule? Instead of the whole community being subjected to the liability for the debt of one sole spouse, only half of the community property in Washington State is subjected to it. But it's just collection and, you know, taxpayer's rights and property, it's fundamental, it depends on state law. And that's true, not just for the commissioner, but for any creditor of a sole spouse in California. And there's no reason to put the commissioner at a disadvantage. And you would need evidence that Congress wanted to do this, but the lifting of community property law had been in place for some time, but only with regard to ascribing the items between spouses. And the House bill, which contained really a little bit liberalized relief, had much the same language in it. The Senate dropped some of the restrictive language, but it needed to because it was proposing a whole new type of relief for putting people on a footing as if they had filed separate returns, and asking the commissioner to write regs, and giving the commissioner equity and flexibility to ascribe income items between spouses. So you would think that if Congress intended to work this watershed change in collection, that the reporting committee would be able to do it. And Congress would talk about it, but instead they just talk about ascribing items between spouses not to be done under community property laws, instead of saying anything about working a huge change like this. The House committee report also says that the tax court can order refunds as appropriate, where it determines that the spouse qualifies for relief, and an overpayment exists. And I know we think that that supports the determination that's made without regard to community property laws, being the determination of threshold eligibility for relief. So we've already touched upon some of the problems that would result, for instance, putting married filings separately in California on a worse basis than this. And we've talked about the potential for abuse in structuring payments. But another problem is that there's, you know, assuming that Congress really intended to preempt community property laws, it didn't prescribe any rules for how to get down to the business of allocating payments between spouses. And this is extremely strange, because they prescribe copious rules in subsection D for allocating payments between spouses. And for purposes of the people who were going to be, you know, the divorced and separated taxpayers who were going to be put on a separate return basis. So that silence speaks volumes as to what we're talking about. Let me ask you a couple questions, if you don't mind. Sure. Which version of the innocent spouse statute do we apply here, the pre-6015G or the current version? The current 6015G is applicable because it applies, you know, even though these tax years are 1982, 1983 and 1984, the statute applies to the extent that something is unpaid as of an amount remains unpaid as of the date of enactment. And that's why. All right. Let me ask you another question. Okay. Judge Vasquez, in his dissent, he tells us that 6015 supersedes 6321 because it was enacted later. What's incorrect about that analysis? He was focusing on the language in the refund subsection and the language notwithstanding any other law or rule of law. And as I've already explained, the real thrust of that is that it's a special rule lifting race judicata. And the evidence of that is in the 1976 Act and the language in the 1988 Act. You know, we're also lifting race judicata for new types of relief. And to think that Congress sub silentio, you know, even going along with the conceit that, well, I guess I don't want to go along with the conceit that Congress was going to just set aside the whole fabric of the federal tax collection scheme without explicitly doing so, and also without providing rules for how you do it. And Judge Marvell and Judge Vasquez might not have even been in complete agreement about the proper way to go about allocating items between spouses, because Judge Vasquez wanted to go along with the general property law of California and Judge Marvell wanted to just say, well, community property is like, the closest thing is tenants in common. So if you go along with this, then you've set aside a very fundamental thing. You've created a vacuum, and you haven't prescribed any rules to take their place. And we don't think that Congress could have intended to do this without expressly saying so. All right. Time's up. Okay. Well, thank you very much. Okay. I'll give you a minute. First of all, the express intent that the Commissioner says is absent is reflected in Section 6015EBI, where a provision was included expressly stating that the levy provisions and the collection provisions would not apply to innocent spouse applicants. Now, granted, that term applies expressly only during the time the application is pending. It doesn't expressly deal with after the fact, after innocent spouse relief has been granted. But the implication is that Congress could not have intended an innocent spouse applicant to be better off than a spouse who has been granted innocent spouse relief. That's the first point. The next point about Congress didn't prescribe how to allocate payments, the reason they didn't is because they intended that payments would be allocated in the same way they've always been allocated. That's the point I made before. This is not a new change. Thank you.  Thank you. We come to the last matter on the calendar, Martin v. County of San Diego. Thank you.
judges: Pregerson, Nelson, Fernandez